## Richmond.

WRIGHT v. ATLANTIC COAST LINE RAILROAD COMPANY.

January 13, 1910.

Absent, Buchanan, J.

1. RAILROADS—*Personal Injury—Contributory Negligence.*—One who deliberately stands upon a railroad track in front of a rapidly approaching train, in plain view, and is struck by the train, is guilty of such contributory negligence as bars recovery.

2. NEGLIGENCE—*Risk to Save Life—Imminent Peril—Negligence of Defendant.*—The right of one person voluntarily to risk his life or safety to rescue another from imminent danger caused by the negligence of another involves two propositions—first, the party to be rescued must be in imminent danger; and, second, that peril must have been caused by the negligence of that other. Furthermore, to hold that other liable, the person to be rescued must have been, at the time of the attempted rescue, in a place of imminent danger caused by the negligence of the defendant, in order to excuse the contributory negligence of the rescuer.

3. RAILROADS—*Sounding Whistles—Knowledge of Danger.*—A plaintiff cannot complain of the failure of the servants of a railroad company to sound the whistle of an engine if he has all the knowledge he would have had if the whistle had been sounded. The purpose of sounding the whistle is to give warning of an approaching train to those who are ignorant of its approach.

4. RAILROADS—*Persons Approaching Track—Presumption.*—A railroad company cannot be held liable for the failure of its engineer to anticipate that a person approaching a crossing is going to step upon the track immediately in front of a rapidly moving train, unless there is something to suggest to the engineer that such person does not intend to remain in a place of safety. He has the right to assume that the person is in possession of his faculties, and will retain his place of safety.

5. RAILROADS—*Signal to Stop—Remaining on Track—Personal Injury.* A signal to stop, given by a stranger, to a train which is under no obligation to stop, is no warning to the engineer that a person in a place of safety is going to step on the track immediately

in front of the train, and the apprehension that he may do so
cannot justify the person giving the signal in remaining on
the track until struck by the oncoming train.

6. NEGLIGENCE—*Risk to Save Life—Self-Imposed Peril.*—The attempted
rescue of one from a self-imposed peril by stepping onto a rail-
road track immediately in front of a rapidly approaching train,
cannot excuse the negligence of the rescuer in remaining on the
track till struck by the train.

7. CARRIERS—*Passenger—Care For His Own Safety.*—A passenger is
bound to exercise ordinary care for his own safety.

8. NEGLIGENCE—*How Pleaded—Wilful Injury.*—Negligence is a conclu-
sion of law from facts sufficiently pleaded. It is not sufficient
to charge that the plaintiff was wilfully and wantonly injured.
The facts relied on to establish the wilful and wanton negligence
for which the defendant is to be held liable must be stated with
reasonable certainty.

Error to a judgment of the Circuit Court of Nansemond
county in an action of trespass on the case. Judgment for the
defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Robert W. Withers,* for the plaintiff in error.

*D. Tucker Brooke, Wm. B. McIlwaine* and *E. E. Holland,*
for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought by Maude L. Wright to re-
cover damages for injuries alleged to have been suffered in con-
sequence of the negligence of the defendant railroad company.
There was a demurrer to the plaintiff's declaration and to each
of its four counts, which was sustained by the circuit court, and
thereupon this writ of error was awarded.

In the view we take of the case it is only necessary to con-
sider the ground of demurrer which rests upon the contention

that the plaintiff was guilty of such contributory negligence as to preclude all right of recovery under her declaration.

Taking the declaration as a whole, its salient allegations are, that on the day of the accident the plaintiff, a young, strong, active woman, and her mother, went to "Dean's," a flag station on the line of defendant's road, to take passage for Suffolk, another station on the line of the same road; that at Dean's no regular resident agent was employed, those desiring to board trains being invited and required to stand on or near the track and waive some object across the track as a signal to the engineer to stop the train; that the station was reached within one hour before the arrival of the expected train, and while her mother was some distance away and on the opposite side of the track from the station, the plaintiff saw a train coming which she took to be the passenger train she expected to take, but which turned out afterwards to be a fast freight train; that she saw this train when it was five hundred yards off, and when it could have been easily stopped before reaching the station, and that as soon as she saw it she stepped upon the track and commenced, in the usual and customary way, signaling to the defendant's employees to stop the train by waiving across the track a large bag or box, which was seen by those in charge of the train in ample time to stop before reaching the station; that while. thus standing and signaling the train she saw her mother walking along the public highway toward the railroad crossing, twenty yards east of the station, in the unobstructed view of the employees on the approaching train, and at such an angle that her mother's back was toward the engine, and that unless her mother stopped or turned aside, or unless the approaching engine was stopped or its speed slackened, her mother would reach the track at the public crossing just in time to be struck and killed, all of which was plainly seen by the defendant's servants, who carelessly and negligently failed to sound the whistle for the public crossing as required by law, and that thereupon, in order to save her mother from the danger in which the defendant's negligence had placed her, and

from the certain death then impending, she shouted to her mother to stop, which, because of the noise and confusion her mother did not hear, or if she heard did not heed; that at the same time the plaintiff persistently stood on the track in full and unobstructed view of the employees who were operating the train and while there was ample time to stop or slacken the speed of the engine, plaintiff believing that the only way to save her mother was to keep herself in an obviously dangerous place and thus stop the oncoming train; that under these circumstances the defendant's employes knew or ought to have known that she expected them to stop the train or to impede its speed, and that she would not get off the track until one or the other had been done; that the defendant, not regarding its duty, but grossly violating the same, wrongfully and negligently failed and refused to stop its train or slacken its speed, or to indicate by short blasts of the whistle, as is the well known custom, that the train would not stop, by reason of which negligence the engine struck and killed the mother, and that the plaintiff was either struck by the lifeless body of her mother being hurled with great violence against her, or the plaintiff not having gotten quite out of harm's way was struck by the overhanging parts of the engine, thereby causing the injuries complained of.

The first, second and third counts of the declaration allege that the plaintiff bore to the defendant company the relation of a passenger. The fourth count alleges that she was a licensee, and further alleges that the employees of the defendant wilfully and wantonly injured the plaintiff by failing and refusing to stop the train or to slacken its speed.

These allegations show that the plaintiff deliberately stood upon the track in front of a train which she saw was rapidly approaching her, and made no effort to get out of its way. She deliberately refused to exercise even ordinary care to avoid injury, which she could have easily done by stepping to one side. There can be no question that she was guilty of contributory negligence, unless, as contended, her act is to be excused upon the

ground that she was injured while attempting to save a human life, which was, as alleged, placed in jeopardy by the defendant.

It is not denied that the law is well settled that it is not contributory negligence, *per se,* for one voluntarily to risk his own safety or life in attempting to rescue another from imminent danger caused by the negligence of the defendant. This principle involves two propositions: First, it must appear that the party to be rescued is in imminent danger; and, second, that the peril must have been caused by the negligence of the defendant.

The alleged peril of the mother at the time the attempt at rescue was made by the plaintiff may well be questioned. The allegations show that while the plaintiff was standing upon the track and signaling the approaching train, she observed her mother approaching the railroad crossing along the public road, and shouted to her to stop, but that because of the noise her mother did not hear, or hearing did not heed. The attempted rescue consisted in signaling the train and shouting to her mother while she was walking along the road, not in peril, but in a place of safety. It would seem that the mother's peril arose when she deliberately stepped from her place of safety in the public road upon the track in front of a rapidly moving train, when it was too late to save her or to save the plaintiff.

According to the authorities, as already seen, the mother must have been, at the time of the attempted rescue, in a place of imminent danger caused by the negligence of the defendant, in order to excuse the contributory negligence of the plaintiff. The negligence which is alleged to have put the mother in peril is that the defendant's servants failed to blow the road crossing signal, and failed to blow a warning signal, or to stop or slacken the speed of the train after the engineer saw her danger.

Assuming that the failure to sound the whistle was negligence, the question is, did the failure to sound it put the plaintiff's mother in peril?

The purpose of sounding the whistle is to give warning of an approaching train to those who are ignorant of its approach.

The allegations of the declaration quite plainly show that the plaintiff's mother knew the train was approaching. The plaintiff alleges that her mother did not hear her shout because of the noise. The noise referred to must have been the noise of the train—no other noise is suggested by the facts alleged. The plaintiff was standing in front of her mother signaling the train to stop, and the mother was walking toward her. The mother was near enough to the approaching train to step from the public road immediately in front of the engine, just in time, as alleged, to be struck and killed. The plaintiff in her petition for this writ of error practically admits that her mother knew the train was coming when she says: "Just at this time the plaintiff saw her mother, who had evidently seen her flagging, coming to get on the train." It cannot be doubted from these allegations that the mother both saw and heard the train, and, therefore, had all the knowledge she would have had if the whistle had been sounded; and yet with this warning she stepped upon the track just in time to be killed. *Southern Ry. Co.* v. *Daves,* 108 Va. 378, 61 S. E. 748.

Further, no duty rested upon the servants of the defendant who were operating the train to either stop or slacken its speed. During all the time the plaintiff's mother was approaching along the public road to the crossing she was in a position of safety, and there is no rule of law which charged the engineer with knowledge that she was about to change her position of safety for one of peril. The railroad company cannot be held liable for the failure of the engineer to anticipate that a person approaching a crossing is going to step upon the track immediately in front of a moving engine, unless there is something to suggest to the engineer that the person does not intend to remain in a place of safety. The rule is believed to be universal—it is certainly firmly established in this jurisdiction—that the engineer has the right, under such circumstances, to assume that the party is in the possession of his faculties and will retain his place of safety, and not recklessly expose himself to danger. *Johnson's*

*Admr.* v. *C. & O. Ry. Co.,* 91 Va. 171; 21 S. E. 238; *Southern Ry. Co.* v. *Daves, supra; N. & W. Ry. Co.* v. *Davis' Admr.,* 108 Va. 514, 62 S. E. 337.

It is contended that the signal the plaintiff was making with her bag or box should have been a warning to the engineer. That was not a danger signal, but a signal to stop a passenger train at a flag station where the freight train was under no obligation to stop. The engineer knew from that signal that the plaintiff was aware of the approach of his train, and had the right to assume that she would not remain on the track until it was too late for him to avoid a collision. The signaling of the plaintiff did not suggest that the mother was going to leave her place of safety and step on the track immediately in front of the moving engine.

The mother's peril, from which the plaintiff attempted to rescue her, was, therefore, not the result of the alleged negligence of the defendant in failing to sound whistles, or in failing to stop or slacken the speed of its train, but was due solely to her own negligence, and, therefore, the attempted rescue cannot excuse the negligence of the plaintiff in remaining upon the track in front of an approaching engine until injured in the manner complained of.

It is not necessary to decide in this case the question whether or not the plaintiff was a passenger, for if she bore that relation and was entitled to the high degree of care it imposes upon the defendant, she would not be thereby relieved from the duty of exercising ordinary care for her own safety. *Pendleton* v. *R., F. & P. R. Co.,* 104 Va. 813, 52 S. E. 574.

The fourth count alleges that the negligence of the defendant was wilful and wanton, but it contains no allegation which shows intentional wrong on the part of the engineer. It alleges no omission of duty which would make his conduct wilful or wanton. It is not sufficient to charge that the plaintiff was wilfully and wantonly injured. If that naked allegation were sufficient, the plaintiff could, in every case, be easily re-

lieved from the consequences of his own imprudence.   Negligence is a conclusion of law from facts sufficiently pleaded.   The facts relied on to establish the wilful and wanton negligence for which the defendant is to be held liable must be stated with reasonable certainty.   No such facts are alleged in the count under consideration.

There is no error in the judgment of the circuit court sustaining the demurrer to the plaintiff's declaration, and it is affirmed.

*Affirmed.*