# Richmond

## VIRGINIA ELECTRIC & POWER COMPANY, A CORPORATION V. LEROY W. EVANS.

March 8, 1943.

Record No. 2640.

Present, Campbell, C. J., and Hudgins, Gregory, Browning and
Eggleston, JJ.

The opinion states the case.

*T. Justin Moore, Leigh D. Williams* and *Archibald G.
Robertson,* for the plaintiff in error.

*Preston P. Taylor,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Leroy W. Evans, hereinafter called the plaintiff, was injured when his automobile, driven by himself, was struck by a street car operated by the Virginia Electric & Power Company, hereinafter called the defendant. Evans has recovered a verdict for judgment against the defendant for damages for his personal injuries and damage done to his automobile. The judgment is before us on a writ of error granted to the defendant.

The question presented to us is within a narrow compass. The defendant contends that, granting that the operator of the street car was negligent, the plaintiff's own testimony shows that he was likewise guilty of contributory negligence which bars his recovery, and that accordingly the trial court should have set aside the verdict and should have entered a final judgment for the defendant.

The collision occurred at the intersection of Granby street and Government avenue, in that suburban part of the city of Norfolk known as Ocean View. The defendant operates a double-track electric car line running approximately north and south along Granby street to and from Ocean View. On either side of the car tracks is a paved vehicular roadway, approximately twenty feet wide, the eastern lane being used for northbound traffic, and the western lane for southbound traffic. That portion of the street between these two vehicular roadways, and occupied by the car tracks, is unpaved.

Government avenue crosses Granby street at right angles and runs approximately east and west. Between the car tracks, and on either side therof, it is paved to a width of about thirty-three feet. This paved area on Government avenue spreads out to an additional width where it connects with the two vehicular roadways. Granby street and the car tracks thereon are straight for several blocks both to the north and south of Government avenue.

The collision occurred shortly before seven o'clock in the morning on December 12, 1940. It was dark and the atmos-

phere was very foggy. Despite the fact that the headlights on the street car were burning, and the interior of the car lighted, the plaintiff testified that the car was not visible over a distance of one hundred feet. The plaintiff, after having picked up a companion south of the Government avenue crossing, drove northwardly along the western driveway on Granby street (contrary to traffic regulations*) toward the crossing, where he intended to make a right turn and proceed across the two car tracks to the eastern vehicular lane on Granby street. Here he intended to turn left and proceed northwardly in this lane.

The plaintiff said that when he arrived at Government avenue there was no traffic in the western vehicular lane on Granby street, along which he had been proceeding, but that there was considerable traffic going northwardly along the eastern lane which he desired to enter; that before going on the southbound car track—that is, the one which he had to cross first—he stopped and looked both ways; and that due to the lights at Ocean View, to his left, he could see several blocks in that direction. Due to the fog and poor visibility he could see but a short distance to his right. He neither saw nor heard a street car coming from either direction. He then proceeded across the first car track in safety. But three or four automobiles, proceeding one after another in a northwardly direction in the eastern vehicular lane of Granby street, made it impossible for him to get into this lane. Consequently, he stopped his car on the northbound car track and waited for a period of approximately thirty seconds for the traffic situation ahead to clear up. In the meantime, he said, before going on this track, he had again looked to his right and could neither see nor hear any street car approaching. While his automobile was standing on the track, and he was waiting for an opportunity to get into the traffic lane ahead, the right side of his automobile was struck broadside by a northbound street car

*The defendant makes no contention that this traffic violation was a proximate cause of the collision.

which he neither saw nor heard until the moment of the impact.

The plaintiff further testified that he lived and had his place of business within a short distance of the scene of the collision, and was familiar with the crossing and the surrounding conditions there.

The undisputed testimony is that the street car was proceeding at a speed of not more than twenty miles per hour. According to the motorman he first saw the automobile standing on the track when his car was about forty feet away; that he immediately put on the emergency brakes but was unable to bring the car to a stop before the collision.

Assuming that the motorman was guilty of negligence, we think the plaintiff's own testimony and the surrounding physical facts show that he was guilty of contributory negligence which bars his right of recovery.

Since the plaintiff was familiar with the crossing, he knew that this was not a crowded downtown section where street car operators might expect a congestion of traffic at a crossing, and where street cars customarily move slowly. The traffic condition ahead was open and obvious to him. He saw that from the number of automobiles using the north-bound lane of Granby street he would have difficulty in entering there. He knew that the visibility was poor and that the operator of a street car might have difficulty in seeing him should he stop on the track. He could have stopped short of the track or he could have gone forward at a slight angle on to the paved section between the track and the vehicular lane ahead.

And, yet, in this situation he not only drove on the track but remained there for approximately thirty seconds and until his automobile was run down by a street car, moving at a moderate rate of speed, which he neither saw nor heard until the impact occurred. To use his own words, "I didn't a bit more know the street car was in a mile when it hit me".

Moreover, the plaintiff admitted that, despite the poor visibility, he could have seen the lights of the approaching street car for at least one hundred feet. He also testified

that had he seen the approaching car he would have gotten off the track. This he could easily have done by going either forward or backward. There was no other automobile using the crossing to prevent his doing either. But he took no steps for his safety. He did nothing. He sat in his automobile, standing on the track, with his attention centered on the vehicular traffic, some sixteen feet ahead, which presented no immediate danger to him, and kept no lookout whatever for the street car which was bearing down on him. He made no claim that after he had come to a stop on the track he even once looked in the direction of the approaching street car.

The situation here is quite similar to that which was before us in *Virginia Electric, etc., Co.* v. *Bennett,* 156 Va. 910, 159 S. E. 93, where the driver of an automobile heedlessly waited in front of an approaching suburban street car for the automobile traffic ahead of him to clear up. There we held that the negligence of the driver at least concurred with that of the operator of the street car and precluded the former's right of recovery.

The judgment will be reversed and final judgment will be here entered for the defendant.

*Reversed and final judgment.*